IN RE :

APPLICATION UNDER 28 U.S.C. § 1782 TO
TAKE DISCOVERY FROM BROOKFIELD
INFRASTRUCTURE PARTNERS L.P.,
BROOKFIELD ASSET MANAGEMENT
LTD., BROOKFIELD CORPORATION,
CAHILL GORDON & REINDEL LLP, KPMG
LLP, THE BANK OF NOVA SCOTIA,
SCOTIA CAPITAL (USA) INC., SCOTIA
HOLDINGS (USA) LLC, ARUP LATIN
AMERICA S.A., ARUP AMERICAS, INC.,
CITIBANK, N.A., WELLS FARGO, N.A.,
JPMORGAN CHASE & CO., THE CLEARING
HOUSE PAYMENTS COMPANY L.L.C., AND
THE FEDERAL RESERVE BANK OF NEW
YORK

Case No.   1:24-mc-00533

**DECLARATION OF RICHARD ALLEMANT IN SUPPORT OF APPLICATION**
**UNDER 28 U.S.C. § 1782 TO TAKE DISCOVERY IN THIS DISTRICT**
**FOR USE IN FOREIGN PROCEEDINGS**

I, Richard Allemant, declare the following under the penalty of perjury pursuant to 28

U.S.C. § 1746:

**I.      Background**

1.      I was admitted to the Lima Bar Association in 1995 and am licensed to practice

law in Peru.  I am a partner of the law firm Lazo Abogados with an office in Lima, Peru.

2.      I have more than 25 years of experience working in litigation and providing

support for civil, criminal, and commercial litigation in Peru.

3.      I make this declaration in support of the application under 28 U.S.C. § 1782

authorizing the applicant to conduct discovery for use in foreign proceedings ("Application")

filed on behalf of the Metropolitan Municipality of Lima, the government for Peru's capital city

1

(the "MML").  All statements in this declaration are based upon my professional knowledge, experience, and belief, or upon my review of the documents maintained by Boies Schiller Flexner LLP in the regular course of its representation of the MML, including information provided by the MML and public records.  Insofar as they are within my own knowledge, experience, and belief, the facts and matters set forth herein are true to the best of my own knowledge, experience, and belief.

4.    The MML, as a sovereign, seeks assistance from the United States District Court for the Southern District of New York ("District") to obtain documents and testimony from entities and individuals residing or found in this District—specifically, to take discovery from Brookfield Infrastructure Partners L.P., Brookfield Asset Management Ltd., Brookfield Corporation, Cahill Gordon & Reindel LLP, KPMG LLP, The Bank of Nova Scotia, Scotia Capital (USA) Inc., Scotia Holdings (USA) LLC, Arup Latin America S.A., Arup Americas, Inc., Citibank, N.A., Wells Fargo, N.A., JPMorgan Chase & Co., the Clearing House Payments Company L.L.C. ("CHIPS"), and the Federal Reserve Bank of New York ("Fed-NY") (together, the "Discovery Subjects").  The MML plans to use the requested evidence from the Discovery Subjects to support actual and contemplated criminal proceedings in which the MML has an interest.

5.    The proceedings concern a government concession contract awarded by the MML to a consortium of companies led by Odebrecht S.A. ("Odebrecht").  The concession contract was intended to improve, build, and maintain highways in Lima, Peru in exchange for toll revenue collected on those roads ("Concession Contract").  Odebrecht acted through its subsidiary Rutas de Lima S.A.C. ("Rutas") to execute this project.  Revelations of bribery and illicit payments involving Odebrecht raised concerns about the legality of the Concession

Contract and corresponding amendments.

6. The MML intends to use due diligence records, wire transfer records, bank statements, other transaction data, and testimony from the Discovery Subjects to establish the corruption underlying the Concession Contract, including by showing the flow of funds, identifying unusual and suspicious transactions or acts, and uncovering relationships between individuals and entities that are likely to have knowledge about the corruption.

## II.     The Foreign Proceedings

### A.     Overview of Criminal Prosecutions in Peru

7. In Peru, multiple government agencies play a role in criminal prosecutions. The key figures include the *fiscal*, who leads the investigation and prosecution of criminal offenses, and the *procurador*, who represents the state's legal and financial interests. In Peru, the Office of the Attorney General of the Republic is responsible for appointing *procuradores públicos* for the various public entities that constitute the state structure. Legislative Decree No. 1326, Jan. 6, 2017 (Peru). Among the *procuradores públicos* there are also the *procuradores anticorrupción*, who are appointed by the State Attorney General and are specifically in charge of matters related to corruption involving public officials. In criminal investigations, these different roles intersect when a *procurador* supports a *fiscal* in cases of corruption or financial crimes, ensuring that the state recovers damages or otherwise defends its interests while the fiscal pursues criminal charges. Additionally, in a criminal investigation, there may be an "aggrieved" party to the misconduct at issue, and that party may be a governmental entity such as the MML. As an aggrieved party, the MML has participation rights in criminal investigations to ensure that its interests are adequately represented.

8. Criminal proceedings in Peru encompass several phases that lead to a trial—the

preliminary investigation phase, the preparatory investigation phase, the accusation phase, and the oral trial. The burden of proof increases with each phase. There is judicial involvement early in the process.

9. The first phase is the preliminary investigation. *See* Peru Criminal Procedure Code ("CPC"), arts. 329, 330, Legislative Decree No. 957, July 22, 2004 (Peru). Only a fiscal can decide whether to initiate a preliminary investigation—either *sua sponte* or in response to the filing of a complaint. CPC arts. 326, 329. A procurador or an aggrieved party can file a complaint to help initiate an investigation. CPC art. 94. The standard to initiate a preliminary investigation is "simple suspicion" that a crime has occurred. CPC art. 330.

10. If the fiscal determines that, based on available information, this standard has been met, he will officially open a case file (*carpeta fiscal*) through a prosecutorial order (*disposición fiscal*). CPC art. 329. Once the case file is opened, the investigated person is formally notified of the investigation, the provisional charges, the facts of the case, and their right to legal counsel, which may be appointed by the government if he cannot hire counsel. CPC art. 330. Additionally, the fiscal can request that the judge impose preventative measures, such as restrictions on leaving the country or detention, among others. CPC art. 261. During the preliminary investigation phase, the fiscal gathers evidence, such as documentary evidence, testimony from the accused, and witness statements. CPC art. 330.

11. If the fiscal finds that the "simple suspicion" standard is not met, he may dismiss a complaint through a formal written decision. CPC art. 334. An aggrieved party has the right to challenge a dismissal so that the file is submitted to the *fiscal superior*, who can decide to move forward with the investigation or to confirm the decision to close the case. CPC art. 334.

12. The next phase is the preparatory investigation. CPC art. 334. To proceed to this

phase, the fiscal must find that a higher standard, the "revealing suspicion" standard, has been met based on the evidence collected during the preliminary investigation. CPC art. 336. In the preparatory investigation phase, the case is assigned to a tribunal and a judge (*juez de garantias*). The judge acts as a neutral adjudicator; he supervises the investigation, adjudicates any disputes that arise between the fiscal and the defense regarding procedural matters (such as the admissibility of evidence and requests for certain investigative actions), and monitors compliance with deadlines. CPC arts. 323, 334. The preparatory investigation phase includes more comprehensive evidence gathering, which may involve obtaining expert opinions and requesting the judge issue search warrants. Once the preparatory investigation is completed, the fiscal may choose to dismiss the case before moving to the next phase. CPC art. 336. A dismissal requires a formal written decision, and an aggrieved party and the procurador have the right to appeal a fiscal's decision to close the case or the decision by the judge to dismiss the case. CPC art. 345. If the case is not dismissed, it moves to the next stage.

13.     Aggrieved parties play an active role in both phases of the investigation. They have the right to be informed about the progress of the investigation; the right to submit evidence, including documents and witness testimony; the right to request that the fiscal gather specific evidence or take certain actions, such as seeking warrants; the right to advocate for their interests by highlighting the importance of certain evidence; and the right to participate in hearings or proceedings related to the investigation. CPC art. 95. If an aggrieved party presents evidence to the fiscal, the fiscal must assess the adequacy of the evidence and incorporate it into the investigation for its relevance. CPC art. IV.

14.     The accusation phase is next. This phase focuses on whether the case merits going to trial. In this stage, the judge reviews the fiscal's formal charges, which the fiscal presents

through a "formal accusation" (*acusación formal*). This document presents the specific charges, the relevant facts based on the evidence gathered during the entire investigation process, and a request for trial. CPC art. 349. The judge then holds a hearing called the "control of accusation" (*control de acusación*), where the judge examines the fiscal's formal accusation to determine whether it meets legal standards and is supported by the facts. CPC art. 351.

15.    The main participants in this phase are the judge, the fiscal, the defense, and the procurador who represents the aggrieved party. The fiscal argues why the case should proceed to trial; the accused challenges the formal accusation and the evidence presented; and the aggrieved party represented by the procurador has a right to participate in the hearing and may present arguments supporting the fiscal's accusation or challenging attempts to dismiss the case. CPC art. 95. In addition to assessing whether there is a sufficient legal and factual basis to proceed to trial, the judge also resolves disputes over the admissibility of evidence. CPC art. 155. The judge will then issue a decision and may (i) approve the formal accusation and order the case to proceed to trial, (ii) partially dismiss or modify the charges, (iii) request further investigation, or (iv) dismiss the case entirely. CPC art. 158. The fiscal, aggrieved party, or procurador can challenge a dismissal, subjecting the decision to further review by the Criminal Chamber of the Superior Court. CPC art. 95.

16.    The trial is the final stage of the criminal process, where the fiscal presents the accusation and the defense presents its case before the judge. CPC art. 355. The burden of proof is "beyond a reasonable doubt." CPC art. 2. The proceeding includes opening statements, evidence presentation, witness testimony, closing arguments, and deliberation and verdict. CPC art. 355. An aggrieved party has participation rights in the trial and, through coordination with the fiscal, can submit evidence, such as additional documents and testimony, that strengthen the

fiscal's case.  Additionally, new evidence may be presented at the *juicio oral* by formally requesting its admission.  CPC art. 373.  The judge decides whether to admit the evidence and typically leans towards admission if the evidence is material and was not previously available.  CPC art. 374.

**B.    The Criminal Proceedings and Contemplated Criminal Proceeding in Peru**

17.    There are various Peruvian proceedings relevant here—one proceeding in the preliminary investigation phase (the "Contemplated Criminal Proceeding"), and others in the preparatory investigation phase, the accusation phase, or the trial phase (the "Criminal Proceedings").  The Criminal Proceedings and Contemplated Criminal Proceeding are grounded in the allegations of corruption involving the Concession Contract for the Vías Nuevas de Lima or Línea Azul ("Project," also referred to as Rutas), Odebrecht, and accomplices and complicit beneficiaries to the corruption.  They are listed below.

i.    Case 029-2023, The Brookfield Money Laundering Investigation

18.    On August 8, 2023, the fiscal from the Peru "Special Lava Jato [Operation Carwash] Team" initiated the preliminary investigation for money laundering charges for those responsible for Brookfield Infrastructure Group Peru S.A.C. ("Brookfield Peru"), Case 029-2023 (previously Case 036-2023) (the "Brookfield Money Laundering Investigation").  The elements of money laundering are converting or transferring money, goods, or assets whose illicit origin the person knows or should have presumed, in order to avoid the identification of their origin, their seizure, or their confiscation.  Legislative Decree No. 1106.  The Brookfield Money Laundering investigation resulted from a complaint filed by the MML and concerns allegations that those responsible for Brookfield Peru laundered money on behalf of Odebrecht.  Even though Odebrecht sold its majority stake in Rutas, Odebrecht (through Odebrecht-linked executives and

legal arrangements) appears to continue to exercise control over Rutas, not Brookfield Infrastructure L.L.P. ("Brookfield Infrastructure"), the entity that acquired a majority stake in Rutas. This raises serious questions about whether Brookfield Infrastructure's purchase was a legitimate transaction or a mechanism to protect Odebrecht's assets from potential seizure in criminal proceedings.

19. For example, records from Peru's National Superintendence of Public Registries show that main Odebrecht executives, Jorge Henrique Simoes Barata, Felipe Ferreira Neves, and Raúl Pereira Neto, were granted powers of attorney for Rutas until at least January 2017. Between 2016 and 2023, Odebrecht executives Raúl Neto, Bruno Falcao De Seixas Sampaio, Luiz Martins Catharino Gordilho Neto, and Oscar Eduardo Salazar Chiappe were appointed as directors and legal representatives in Rutas. Additionally, Odebrecht appears to have continued to manage the "e-pass" automatic toll collection service for Rutas.

20. The Brookfield Money Laundering Investigation examines whether these and other acts violated Peruvian law and investigates the circumstances of Brookfield Infrastructure's acquisition of a majority stake in Rutas. As part of the assessment on culpability and intent, the fiscal is assessing whether Brookfield Infrastructure's acquisition involved inadequate due diligence in purchasing Odebrecht's majority interest in Rutas, whether in doing so Brookfield Infrastructure violated its own ethical codes or anti-corruption policies, and whether Odebrecht has continued to exercise control over Rutas after selling its controlling interest.

21. The Brookfield Money Laundering Investigation is in the preliminary investigation stage. If it progresses to the next phase, the investigation will continue before a tribunal in a Court of National Preparatory Investigation of the National Superior Court of Specialized Criminal Justice. The investigated persons are those responsible for Brookfield Peru.

In addition to the individuals mentioned earlier, there are others believed to have knowledge relevant to this investigation. These persons include Pedro Martins Pinheiro ("Martins"), a former Odebrecht executive believed to hold a position of power at Rutas on behalf of Odebrecht. On February 24, 2023, Martins was appointed as Titular Director in Rutas's Board of Directors. Additionally, Sarita Vilchez, who worked for the MML from January 1, 2019 to February 28, 2019, appears to have knowledge about Rutas's improper e-pass charges during that time.

ii. Case 30-2017, The Villarán Bribery Case

22.    Case 30-2017 ("Villarán Bribery Case") concerns charges of bribery-related crimes and money laundering against the former Mayor of Lima Susana Villarán ("Villarán"), other MML officials, and an Odebrecht executive. This includes allegations that Villarán solicited approximately US $3 million in improper payments from Odebrecht in connection with the Concession Contract. A Peruvian judge recently found at the accusation stage that the evidence supported the case moving into the oral trial phase. The case is now proceeding to trial in the Third National Court of Preparatory Investigation of Crimes of Corruption of Officials. The accused are Villarán, Jose Miguel Castro Gutiérrez, Domingo Arzubialde Elorrieta, Maria Julia Mendez Vega, Daniela Maguiña Ugarte, and Jose Adelmahiro Pinheiro Filho.

23.    The charges are passive and active bribery, incompatible negotiation, and money laundering. Active bribery occurs when a person offers, gives, or promises a donation or benefit to a public official in exchange for the public official performing or omitting acts that go against their obligations, whether or not the official violates their duties. Passive bribery occurs when a public official accepts, receives, or directly or indirectly requests a donation or benefit in exchange for performing or omitting an act that violates their duties. Incompatible negotiation occurs when a public official directly, indirectly, or through a simulated act improperly takes an

interest for personal benefit or that of a third party in any contract or operation in which they are involved due to their position.

### iii. Case 31-2017, The Rutas Money Laundering Case

24.     Case 31-2017 (the "Rutas Money Laundering Case") is in the accusation stage in the Seventh Court of National Preparatory Investigation of the National Superior Court of Specialized Criminal Justice. Among other conduct, this case includes allegations of money laundering for Rutas' payment to Rutas's purported financial advisor, Gerardo Sepúlveda ("Sepúlveda"), of an illegal "success fee" of US $3.5 million upon the financial closing of the Concession Contract. The success fee was wired to an account at Wells Fargo Bank, N.A. located in the United States, which belonged to Latin America Enterprise Fund Managers, LLC ("Latam Fund").

25.     Latam Fund transferred the success fee to different individuals and entities: US $1,942,485 to First Capital Inversiones Asesoría Limitada ("First Capital"), a company owned by Sepúlveda; US $722,865.00 to Westfield Capital Limited, Inc. ("Westfield Capital"), a company owned by former Peruvian President Pedro Pablo Kuczynski ("Kuczynski"); and the remaining funds to Andrés Juan Milla Comitre ("Comitre") and Denise Barbara Hernández ("Barbara"), comptroller of Latam Fund. The Peruvian prosecutors are investigating Sepúlveda, Kuczynski, Gloria Jesus Kisic Wagner, and Jose Luis Bernaola Nufflo. The charge is money laundering with aggravating circumstances.

26.     Additionally, although not named as an investigated person in the case, the entity Dorado Asset Management LTD ("Dorado") appears to have information relevant to the proceeding. Dorado is Kuczynski's offshore company. It appears that Kuczynski used Dorado to obscure the origin of funds from Odebrecht. The funds are believed to have moved in a circular

pattern involving Westfield Capital, Dorado, Kuczynski's personal accounts, and back to Westfield.

### iv. Case 448-2017, The Concession Contract Corruption Case

27.     Case 448-2017 (the "Concession Contract Corruption Case") is in the preparatory investigation stage before the Eighth Court of National Preparatory Investigation of the National Superior Court of Specialized Criminal Justice. The case concerns additional alleged corruption in connection with the Concession Contract that benefited Rutas at the expense of Lima, such as the overvaluation of construction works, unjustified modifications to mandatory projects, improper toll rate increases, and the implementation of questionable compensation mechanisms relating to the Concession Contract. The accused are Villarán, Domingo Arzubialde Elorrieta, Juan Andrés Ramos Arapa, Carlos Fernando Steiert Goicochea, Juan José Neyra Montes, Miguel Alfredo Flores Dueñas, Daniela Canales Hernández, Norma Ana Montoya Blua, Lucio Alva Matteucci, Jaime Villafuerte Quiróz, María Del Pilar Márquez Mares Ramos, Elizabeth Vilca Quispe, María Del Rosario Solís Martínez, Guillermo Segundo Gonzales Criollo, Alfieri Bruno Lucchetti Rodríguez, Liliana Martina Orozco Pinto-Bazurco, Demetrio Rojas García, and Raúl Javier Bueno Cano. The charges are aggravated collusion, criminal association to commit a crime, and incompatible negotiation. Aggravated collusion occurs when a public official conspires with a third party to defraud the State in public contracts for goods, works, or services, and the defrauding of the State has been executed, whether through the disbursement of money, loss of assets, or improper signing of contracts. Criminal association to commit a crime occurs when a group with a complex, developed structure and greater operational capacity—composed of three or more individuals with a stable, permanent, or indefinite character—in a coordinated and concerted manner, divides roles that are interconnected among them for the commission of

crimes.

### C. The MML's Participation Rights in the Criminal Proceedings and Contemplated Criminal Proceeding in Peru

28.     The MML has various participation rights in the Criminal Proceedings and Contemplated Criminal Proceeding in Peru.

29.     First, as a sovereign, the MML has exclusive, formal channels to submit evidence directly to the fiscal and state procuradores in the Criminal Proceedings and Contemplated Criminal Proceeding.  The channels are tailored to the MML's governance structure, allowing for a distinct level of coordination and access not available to other parties or persons.  This is because the MML has a vested interest in proceedings that impact its constituents.  The MML, through the Procurador of the MML, may submit evidence obtained from this Application through those channels for use in the Criminal Proceedings and Contemplated Criminal Proceedings.  Additionally, the fiscal and procuradores will give substantial weight to information provided by the Procurador of the MML, who speaks on behalf of the capital of Peru.

30.     Second, the MML will have significant participation rights as an "aggrieved party" in the Brookfield Money Laundering Case, the Concession Contract Case, and the Rutas Money Laundering Case.  CPC art. 94.  To qualify as an aggrieved party, the MML must have been "directly offended by the crime or harmed by the consequences of it."  CPC art. 94.  The MML qualifies as an "aggrieved party" because it was a party to the Concession Contract and was "directly offended by the crime or harmed by the consequences of it."  The MML intends to seek this status to submit discovery once it is received.  It is my opinion that the MML meets the standard and is likely to obtain this status.

31.     As an aggrieved party, the MML will have the right to (1) be informed about the progress of the investigation; (2) submit evidence, such as documentary evidence and witness

testimony; (3) obligate the fiscal to consider that evidence; (4) request that the fiscal gather specific evidence or take certain actions, such as seeking warrants to obtain evidence that bolsters the case; (5) advocate for the MML's interests by highlighting the importance of certain evidence; (6) challenge the admissibility of evidence presented by others during the investigation; (7) participate in hearings or proceedings related to the investigation; (8) challenge any decision by a fiscal to discontinue an investigation; and (9) participate in the control of accusation hearing by presenting arguments supporting the fiscal's accusation or challenging attempts to dismiss the case.

32.     Fourth, the MML will also have meaningful participation rights as an aggrieved party in the Villarán Bribery Case that is going to trial. For the same reasons, the MML qualifies as an aggrieved party to this case. As an aggrieved party, the MML has the right to submit evidence, through coordination with the fiscal, for the judge's consideration. The judge will be required to consider that evidence.

33.     Fifth, the MML will also have the ability to present evidence for use in the Criminal Proceedings when it applies for aggrieved party status. In its application, the MML may include any helpful evidence obtained through this Application for the judge's consideration. CPC art. 94. The Peruvian judge will therefore consider the evidence for use in those proceedings.

34.     The MML, as a party to the Concession Contract, has a direct interest in these ongoing proceedings. Law No. 30225 (Law on State Contracting) provides the MML with the authority to challenge contracts obtained through illegal means, which is particularly relevant given the allegations of bribery in the procurement of the Concession Contract. Peruvian Law on State Contracting, Law No. 30225, July 11, 2014 (Peru). In addition, Law No. 29230, which

governs public-private partnerships (PPPs) like the Concession Contract, authorizes the MML to act in defense of its interests when corruption is detected in project execution. Law No. 29230, Law Promoting Regional and Local Public Investment with Private Sector Participation, May 20, 2008 (Peru). In the context of criminal proceedings, the MML's role as an aggrieved party is further strengthened by Article 98 of the CPC, which allows entities affected by the crime to participate in criminal proceedings.

### D. The Relevance of the Requested Discovery

35. The MML seeks assistance from the United States District Court for the Southern District of New York to obtain relevant and probative documentary and testimonial evidence from the Discovery Subjects.

36. First, the MML seeks discovery from entities involved in Brookfield Infrastructure's acquisition of a controlling interest in Rutas and the operation of the Concession Contract. This includes due diligence-related documents, such as materials received in response to document and information requests submitted to Rutas and Odebrecht, Rutas's financial statements, Rutas's contracts with third parties, Rutas's communications with government entities and other third parties, documents related to the forensic testing of Rutas's transactions, Rutas's interview questionnaire responses, publicly available information obtained as part of due diligence, and other related documents. In addition to documents, the MML seeks testimony from Brookfield entities concerning Brookfield Infrastructure's due diligence and decision to acquire Rutas's controlling shares.

37. Documents concerning Brookfield Infrastructure's due diligence and the operation of the Concession Contract are relevant to the Criminal Proceedings and Contemplated Criminal Proceeding. The due diligence documents focus on identifying corruption risks and can

be used to establish the elements aggravated collusion, criminal association to commit a crime, incompatible negotiation, money laundering, and active and passive bribery. The documents may reveal agreements or improper arrangements with public officials aimed at defrauding the MML, show a structured network of entities and individuals collaborating to achieve illegal objectives, illustrate transactions, transfers, or schemes designed to disguise the unlawful origins of assets, and reveal transactions or communications indicating that benefits were offered or received to influence MML public officials.

38.     Second, the MML seeks discovery from entities relating to the operations of Rutas, including documents concerning the funds monitored in escrow accounts in connection with Brookfield Infrastructure's purchase of Rutas shares. This discovery is relevant to the Criminal Proceedings and Contemplated Criminal Proceedings. The financial information from the Rutas escrow accounts is relevant to trace the monetary impact of the allegations that former MML officials and others engaged in misconduct involving the implementation and operation of the Concession Contract. This includes the potential financial benefit to Rutas of allegations that the former MML officials overvalued the construction works and agreed to unjustified modifications to mandatory projects, improper toll rate increases, and unjustified compensation mechanisms.

39.     Third, the MML seeks discovery of financial transactions relating to the corruption of former MML officials and the Concession Contract. The information sought includes wire transfer records, bank statements, loan agreements, account opening documents, internal bank communications, correspondence with account holders, cash transaction logs, and beneficial ownership information.

40.     This information is relevant to the Criminal Proceedings and Contemplated Criminal Proceedings, particularly the Concession Contract Corruption Case. Documents

concerning the monitoring of Rutas's escrow accounts and company operations are highly relevant in proving the elements of incompatible negotiation, aggravated collusion, criminal association, money laundering, and bribery under Peruvian law, as they may show financial flows and agreements that are critical in proving the misuse of public office for personal or third-party gain. Escrow account records may show funds or payments tied to decisions or contracts overseen by public officials, including any preferential resource allocation influenced by an official. They may also show collusive agreements, such as through payments through accounts, between MML officials and private parties, and repeated patterns of financial transactions showing a coordinated effort to commit crimes. In the Concession Contract Corruption case, for example, financial information from the Rutas escrow accounts is relevant to trace the monetary impact of the allegations that former MML officials engaged in misconduct involving the implementation and operation of the Concession Contract. This includes the potential financial benefit to Rutas of allegations that the former MML officials overvalued construction works, and agreed to unjustified modifications to mandatory projects, improper toll rate increases, and unjustified compensation mechanisms.

41. Fourth, the MML seeks documents concerning financial transactions relating to the corruption of former MML officials and the Concession Contract. The discovery sought includes wire transfer records, bank statements, loan agreements, account opening documents, internal bank communications, correspondence with account holders, cash transaction logs, and beneficial ownership information. Documents concerning financial transactions are highly relevant to the Criminal Proceedings and Contemplated Criminal Proceedings, as they can be used to establish the elements of aggravated collusion, criminal association, money laundering, bribery, and incompatible negotiation under Peruvian law. These records can reveal illicit

payments or transfers between parties involved in collusive agreements, expose irregular transactions, establish patterns of coordinated efforts among individuals or entities, show efforts to layer and conceal funds, identify funds transferred to public officials, and expose instances where public officials engaged in financial transactions that conflicted with their duties or the public interest.

42. The MML seeks to obtain discovery from the Discovery Subjects located in this District. The evidence obtained pursuant to this Application will be used in both the Contemplated Criminal Proceedings and the Criminal Proceeding, as follows, in addition to the ways described above:

43. In the Criminal Proceedings, the evidence will be used to: (i) trace the flow of funds related to the Concession Contract; (ii) identify suspicious financial transactions; (iii) establish relationships between entities and individuals involved in alleged corrupt activities; (iv) support allegations of overvaluation of construction works, unjustified project modifications, improper toll rate increases, and questionable compensation mechanisms; and (v) demonstrate potential violations of anti-corruption laws and regulations.

44. In the Contemplated Criminal Proceeding, the evidence will be used to: (i) investigate potential money laundering activities related to the acquisition of Rutas; (ii) determine whether Odebrecht maintains control over Rutas despite the sale to Brookfield Infrastructure; (iii) identify any ongoing involvement of Odebrecht-linked individuals in Rutas's operations; (iv) uncover any violations of Brookfield's ethical codes and anti-corruption policies; and (v) establish the true nature of the transaction between Odebrecht and Brookfield Infrastructure, including any potential concealment of assets or income.

### E. Peruvian Courts Are Receptive to Information Obtained Under Section 1782

45.     Peruvian courts would be receptive to evidence the MML obtains under 28 U.S.C. § 1782 for the Criminal Proceedings and Contemplated Criminal Proceeding.  Such evidence is especially pertinent in cases involving corruption, where international collaboration has been key to uncovering cross-border misconduct.

46.     Indeed, the *Nuevo Codigo Proceso Penal* (the New Criminal Procedure Code) governs the criminal justice process in Peru, from investigations to trials, and emphasizes principles of international cooperation in criminal matters.  It provides that the relationships between Peruvian authorities and foreign authorities and with the International Criminal Court regarding international judicial cooperation are governed by International Treaties signed by Peru and, in their absence, by the principle of reciprocity within a framework of respect for human rights.  Art. 508 of the CPC.  Discovery under this Application would provide access to records from entities and individuals within U.S. jurisdiction needed to establish corruption, including to trace the flow of illicit funds.

47.     Additionally, under Peruvian law, the parties to a judicial proceeding, including aggrieved parties, are entitled to submit any kind of evidence to the court, as long as that evidence has not been obtained by illegal means.[1]

48.     Under Peruvian law, the fiscal conducting the investigation may use new evidence the MML provides in the Contemplated Criminal Proceeding.  If the case progresses, the judge overseeing the prosecution in the National Superior Court of Specialized Criminal Justice may consider that new evidence.

---

[1] Article 2(5) of the Peruvian Constitution and Articles 158, 351, 352, and 393 of the CPC.

49.     Similarly, in the Criminal Proceedings in the preparatory investigation phase, the fiscal may use this new evidence, and the judge in the Eighth Court of National Preparatory Investigation of the National Superior Court of Specialized Criminal Justice may consider it.  The same is true for the Criminal Proceeding advancing to trial.  The judge at the oral trial stage may consider new evidence obtained through this Application.

50.     Based on my experience, the relevant tribunals of Peru would be receptive to the documentary evidence and testimony sought through this Application.  To my knowledge, there would be no basis to challenge the admissibility of the documentary evidence before the tribunals, and it is my personal experience that such evidence has been routinely used by Peruvian tribunals in criminal proceedings, including in criminal investigations.  Such evidence is admissible in Peruvian tribunals, and this Application therefore does not circumvent any proof-gathering restrictions under Peruvian law.

**F.     The MML Seeks Discovery from Nonparticipants in the Contemplated Criminal Proceeding and the Criminal Proceedings**

51.     None of the Discovery Subjects are parties in the Criminal Proceedings or Contemplated Criminal Proceeding.

52.     The Discovery Subjects are not subject to jurisdiction in Peru and are not expected to be parties to the Criminal Proceedings or Contemplated Criminal Proceeding.  Absent this Application, and requested order and subpoena authority, the evidence sought here would almost certainly remain outside the reach of the relevant criminal courts in Peru.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on November 18th of 2024.

_____
Richard Allemant