```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/25/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
In Re: BROOKFIELD INFRASTRUCTURE                                   :
PARTNERS L.P., et. al.                                             :     24-mc-533 (LJL)
                                                                   :
                                                                   :     MEMORANDUM AND
-------------------------------------------------------------------X     ORDER

LEWIS J. LIMAN, United States District Judge:

Petitioner the Metropolitan Municipality of Lima ("Petitioner" or "MML") moves, pursuant to Federal Rule of Civil Procedure 59(e) and Local Rule 6.2, for reconsideration of this Court's opinion and order of May 27, 2025 (the "Order"), Dkt. No. 72, vacating its prior order granting discovery under 28 U.S.C. 1782 and vacating and quashing all subpoenas issued under that prior order. Dkt. No. 73. Respondents Brookfield Infrastructure Partners L.P., Brookfield Asset Management Ltd. and Brookfield Corporation (together, the "Brookfield Entities"); the Bank of Nova Scotia, New York Agency, Scotia Capital (USA) Inc., and Scotia Holdings (USA) LLC (together, "Scotiabank US"); and Cahill Gordon & Reindel LLP ("Cahill," and together with the Brookfield Entities and Scotiabank US, "Respondents") oppose reconsideration. Dkt. Nos. 75–77.

For the reasons that follow, the motion for reconsideration is denied.

## BACKGROUND

Familiarity with the prior proceedings in this matter is presumed. On November 22, 2024, the Court granted Petitioner's application pursuant to Section 1782 to take discovery in connection with four pending or anticipated actions in Peru (the "Section 1782 Order"). Dkt. No. 12. The Court did so *ex parte* and without prejudice to potential reconsideration of the application of the Section 1782 factors. The putative foreign proceedings included the "Brookfield Money Laundering Investigation" (29-2023), the "Villarán Bribery Case" (30-

2017), the "Rutas Money Laundering Case" (31-2017), and the "Concession Contract Corruption Case" (448-2017).

Following the issuance of the Section 1782 Order, several discovery subjects filed motions to vacate that order and the subpoenas issued pursuant to it. Dkt. Nos. 22, 38, 44. In the Order, the Court granted those motions and vacated the Section 1782 Order and all subpoenas issued under it. Dkt. No. 72; *In re Brookfield Infrastructure Partners L.P.*, 2025 WL 1503942, at *1 (S.D.N.Y. May 27, 2025). As relevant here, the Court concluded that Petitioner was not an "interested person" within the meaning of Section 1782. *Id.* at *6–9. The Court also concluded that the Brookfield Money Laundering Investigation did not a qualify as a foreign proceeding under Section 1782. *Id.* at *11–12. Finally, the Court concluded that certain of the discovery subjects were not "found" in this District for the purposes of Section 1782 discovery. *Id.* at *14–16.

Less than two weeks after the Court issued the Order, on June 7, 2025, the Republic of Peru, through the Office of the State Procurator General, issued a resolution (the "Resolution") establishing a joint defense arrangement between Petitioner and the "Ad Hoc Public Procurator for the Odebrecht Case and Others" (hereafter, the "Ad Hoc Procurator") in this proceeding, with expenses to be paid by Petitioner and with the Deputy Public Procurator of MML as "coordinator of said joint defense." Dkt. No. 74-1 at 4–5. Three days later, on June 10, 2025, Petitioner filed this motion. Dkt. No. 73.[1]

---

[1] Petitioner also filed a memorandum of law in support of the motion. Dkt. No. 74. Memoranda of law in opposition to the motion were filed by the Brookfield Entities, Scotiabank, and Cahill on June 24, 2025. Dkt. Nos. 75–77. Petitioner filed a reply memorandum in further support of the motion on July 1, 2025. Dkt. No. 78.

2

## DISCUSSION

Petitioner argues that the Order is based on a misunderstanding of the law and a misapprehension of the record and thus should be reconsidered. Petitioner contends that the Court erred in concluding that it was not an "interested person" within the meaning of Section 1782 because, as a sovereign, it has channels to submit evidence to the prosecuting attorneys and, as a criminal complainant in the Brookfield Money Laundering Investigation, it has the right to submit evidence for the prosecutor's consideration. Dkt. No. 74 at 3–6. It also asserts that the Resolution eliminates any uncertainty regarding Petitioner's status because it establishes a joint defense arrangement between the Peruvian state procurators and the MML procurators for the purposes of defending the interests of the Peruvian State. *Id.* at 4. Finally, Petitioner argues that the Court erred in its conclusion that the Brookfield Money Laundering Case did not constitute a "foreign proceeding" within "reasonable contemplation" for the purpose of Section 1782. *Id.* at 7–9.

The motion for reconsideration is opposed by the Brookfield Entities, Scotiabank, and Cahill. Dkt. Nos. 75–77. The Brookfield Entities, joined by Cahill, argue that the Court did not overlook any facts or law in the Order, that Petitioner's status as a complainant did not make it an interested person, and that the Court correctly concluded that the Brookfield Money Laundering Investigation was not a qualifying foreign proceeding. Dkt. No. 75 at 3–4, 8–10; Dkt. No. 77 (Cahill joinder). They also argue that the Resolution is not properly cognizable on a motion for reconsideration and assert that it was issued under "highly questionable circumstances." Dkt. No. 75 at 4. The Ad Hoc Public Procurator initially stated that it had no legal standing to join as a petitioner in these proceedings before changing its position after the Mayor of MML allegedly threatened to bring a criminal complaint against the relevant prosecutor from the Ad Hoc Public Procurator's office. *Id.* at 4–5; Dkt. Nos. 75-1 through 75-6.

3

Finally, the Brookfield Entities argue that the Section 1782 discretionary factors independently justify quashing the subpoenas. Dkt. No. 75 at 10–11. Scotiabank joins in and incorporates the Brookfield Entities' opposition. Dkt. No. 76. It argues that the Court did not overlook any facts or controlling authority in the Order, that the Resolution does not change the outcome, and that, even if reconsideration were granted, discovery still should be denied as to Scotiabank. *Id.*

"A motion for reconsideration should be granted only if the movant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Spin Master Ltd. v. 158*, 2020 WL 5350541, at *1 (S.D.N.Y. Sept. 4, 2020) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)). "The standard for granting a motion for reconsideration 'is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the Court.'" *Justice v. City of New York*, 2015 WL 4523154, at *1 (E.D.N.Y. July 27, 2015) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). Reconsideration of a court's previous order is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys., Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citation omitted). It is not a "vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). Petitioner has not identified any basis for the Court to reconsider the Order.

Petitioner first challenges the Court's conclusion that it is not an interested person with respect to any of the four foreign proceedings. The Court did not overlook any controlling decisions or data. Petitioner's argument simply reflects a disagreement with the Court's decision.

A Section 1782 order may be granted only "upon the application of any interested person." 28 U.S.C. 1782. The term "interested person" has been given "expansive definition." *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 119 (2d Cir. 2015). Still, it is not infinitely elastic. "[T]he ability simply to pass on information to parties in a proceeding, without more, cannot confer 'interested person' status any more than the ability of *amicus* counsel to pass along evidence and arguments to counsel representing one of the parties in litigation." *Id.* at 120. The Second Circuit has stated that a person who is otherwise a stranger to a proceeding may be an interested person if she has "an established *right* to provide evidence and have the party consider it . . . or a recognized relationship, such as that of an agent and principal." *Id*. The Circuit also indicated that the "interested person" requirement might be satisfied where "the relevant jurisdiction's law" gives the applicant the right "to participate and submit evidence in the proceeding." *Id.* The Court applied *Certain Funds* in the Order.

The evidence before the Court established that there are tiers of participation in Peruvian criminal proceedings. The public prosecutor, or *fiscal*, initiates and manages criminal proceedings; it exercises the discretion whether to bring criminal charges or not. *See Brookfield*, 2025 WL 1503942, at *2.[2] An "aggrieved party" is a party who has been "directly offended by

---

[2] The Peruvian system of criminal law draws a distinction between *fiscales*, employees of the *Ministerio Público*, who, like United States Attorneys, prosecute crimes on behalf of the general public, and *procuradores*, including the Peruvian Attorney General and the Ad Hoc Public Procurator, who represent the state as an interested party. *See* Dkt. No. 75 at 6; Dkt. No. 78 at 2;

5

the offense or harmed by the consequences of the offense." *Id.* at *7. An aggrieved party has procedural rights in criminal prosecutions, including the right to provide evidence in support of the prosecution and to have that evidence be considered by the prosecuting authority. *Id.* However, the status of "aggrieved party" must be sought and conferred by the judge presiding over the proceeding. *Id.* Finally, there are persons or entities who have merely "denounced" or filed a complaint for a crime. *Id.* at *8. "Under Peruvian law, criminal complainants, without more, do not have the right to submit evidence that must be considered by the federal prosecutor for submission to the courts." *Id.* at *9 (citing authority).

Petitioner was not an interested person with respect to any of the foreign proceedings because it neither sought nor was granted the status of "aggrieved party"—thus, under Peruvian law, it did not have the right to participate and submit evidence to such proceedings within the meaning of *Certain Funds*. *Id.*. Petitioner also did not show that it was in a principal-agent relationship with a person who had the right to submit evidence in a proceeding. *Id.* While there was evidence that, as a sovereign, MML had "exclusive, formal channels to submit evidence" to the public prosecutors, such evidence showed at most that MML could furnish information in the hope it would be used. *Id.* at *6 (citing *Certain Funds*, 798 F.3d at 121). Petitioner suggests that the Court held Petitioner to a higher standard than required by the Supreme Court in *Intel Corp.*

---

Sept. 23, 2025 Hearing Transcript ("Tr.") at 6:20–7:7 ([Counsel to MML and the State of Peru]: "First is the *fiscal*, who is the prosecutor who initiates the investigations and is responsible for representing society. It's impartial, it's not representing the state of Peru, it's representing society. Second, we have the ad hoc state public attorney which we call them, in Spanish it's *procurador*. That's the client that we have here with us today. They represent the state of Peru, and their unique role in these proceedings is to ensure that Peru is compensated as a civil actor and, as an aggrieved party, has the right to submit evidence in these proceedings. So the *fiscal* is the one that's prosecuting the case, and the *procurador*, or the ad hoc state attorney, is a party to those proceedings who has participation rights as well."). It is undisputed that all four proceedings at issue here are being prosecuted by the *fiscales*, not by the State or Municipal *procuradores*.

*v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) by requiring Petitioner to show that it had "the right to submit evidence that must be considered by the federal prosecutor for submission to the courts." *Id.* at *8. The language regarding the right to have the evidence considered is drawn directly from *Certain Funds*. *See Certain Funds*, 798 F.3d at 120. And the Second Circuit has recently reiterated that "the opportunity to present evidence to a party to a potential lawsuit does not render a movant under § 1782 an 'interested party.'" *IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 679 (2d Cir. 2022).

Petitioner argues that the "Disposition" of the *fiscal* in the Brookfield Money Laundering Investigation supports its qualification as an interested person in that proceeding. Dkt. No. 74 at 5–6. The Disposition states that Petitioner, as well as the Ad Hoc Public Procurator's Office, "may exercise their right to procedural participation, being able to offer acts of investigation and/or elements of conviction" in accordance with Peruvian law. Dkt. No. 49-1 ¶ 5.2. The Court did not overlook this evidence, but rather, rejected Petitioner's argument as to its significance. In fact, the Disposition is consistent with the Court's understanding that while criminal complainants do have certain procedural rights, those rights do not include "the right to submit evidence that *must* be considered by the federal prosecutor for submission to the courts." *Brookfield*, 2025 WL 1503942, at *8; Dkt. No. 39 ¶ 15; Dkt. No. 42 ¶¶ 22–24; Dkt. No. 64 ¶¶ 12–13.

Finally, Petitioner argues that the Resolution makes it an "interested person." Dkt. No. 74 at 4. However, "[t]o prevail on a motion for relief from a judgment on the grounds of newly discovered evidence, a party must establish that . . . 'the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding.'" *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 146–47 (2d Cir. 2020) (quoting *United States v. Int'l Bhd. of*

*Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001)). The Resolution is not "newly discovered evidence" of a fact that existed as of the date that the Court issued the Section 1782 Order—it is evidence of a new fact that arose after that order. The proper vehicle for Petitioner to raise the Resolution thus is not a motion for reconsideration on grounds that the Court's Order was in error. It is through a new application subject to a new set of memoranda and declarations opposing the application. *See Mees v. Buiter*, 793 F.3d 291, 303 (2d Cir. 2015) (stating that "a party may file a new application upon a significant change in circumstances"). In any event, Petitioner has not shown that the Resolution would have led to a different result. It establishes that Petitioner has a joint defense arrangement with the Ad Hoc Public Procurator for the Odebrecht Case and Others. Dkt. No. 74-1 at 4–5. It does not specify what Petitioner's rights are with respect to that arrangement and establish that Petitioner has the right to submit evidence in connection with any of the foreign proceedings.

    Petitioner also has not offered a basis for the Court to reconsider its decision that the Brookfield Money Laundering Investigation was not a qualifying foreign proceeding. The Court did not overlook any controlling law. It specifically applied the Supreme Court's decisions in *Intel* and *Certain Funds*. *Brookfield*, 2025 WL 1503942, at *10. It also did not commit clear error. The Brookfield Money Laundering Investigation did not qualify because it was in its preliminary investigation stage, presided over by a prosecutor who is not akin to "an investigating magistrate or similar neutral adjudicator." *Id.* at *11. The Brookfield Money Laundering Investigation also did not qualify because the possibility that the investigation would yield the necessary "revealing suspicion" to progress the investigation to the next stage was "merely speculative." *Id.* at *11. Petitioner had offered no "objective basis" from which the Court could conclude that that the investigation would move to the next stage where a neutral

arbiter would be present. *Id.*[3] Petitioner points now, as it did previously, to Provision No. 7 of the Public Prosecutor's Office. Dkt. No. 74 at 8 (citing Dkt. No. 39-10). It asserts that the document describes the investigation as being "intended to bring criminal proceedings." *Id.* But, from context, it is apparent that Provision No. 7 describes the function of the prosecutor's office and the subject of the investigation and not its conclusion or even preliminary evidence. The document reflects the determination of the *fiscal* to extend the investigation. Dkt. No. 39-10. It states that the prosecutor's office is investigating "the possible commission of the crime of money laundering." *Id.* § 5.5. It states that additional time is needed because the *fiscal* is still awaiting responses to requests for judicial assistance from Canada and Brazil. *Id.* §§ 6.4–6.5. Petitioner also relies on a statement in the same document that "[t]here is an abundance of this suspicion of money laundering." *Id.* § 3.14. However, that phrase appears in a section which summarizes the criminal complaint initially brought by Petitioner, *see id.* § 3.1, ECF p. 5[4]—to characterize that statement as a conclusion independently reached by the *fiscal* is misleading. The statement does not reflect the understanding of the public body with the discretion to determine whether the proceeding should go to the next stage or not.

Finally, Petitioner offers that the *fiscal* has named BIF III—a Brookfield entity—as a legal entity under investigation and has ordered thirty-two witness interviews. Dkt. No. 74 at 9.

---

[3] In the Order, the Court suggested that the deadline to determine whether the case would proceed to the preparatory stage had been extended by thirty-six months. *Brookfield*, 2025 WL 1503942, at *3, *12. That was in error. The thirty-six months ran from the initiation of the preliminary investigation in August 2023 rather than from the prior deadline of April 2024, and thus the preliminary investigation stage was actually extended by fourteen months. Dkt. No. 74 at 7. But the difference is inconsequential. The Court's decision did not turn on when the decision would be made whether the investigation would proceed to the preparatory stage but whether there was any objective basis to conclude that it would proceed to that stage. Petitioner offered no more than speculation to support that conclusion.

[4] At oral argument, Petitioner did not dispute this point when it was raised by both the Court and by Respondent. *See* Tr. at 24:24–25:7; 48:7–20.

9

That evidence establishes only that the *fiscal* is continuing to investigate. It does not provide any objective basis upon which the Court can predict the outcome of that investigation.

## CONCLUSION

The motion for reconsideration is DENIED. The Clerk of Court is respectfully directed to close the motion at Dkt. No. 73 and to close the case.

SO ORDERED.

Dated: September 25, 2025
New York, New York

_____
LEWIS J. LIMAN
United States District Judge